IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DANIEL LONERGAN,** | Case No. 1:24-cv-02067-PAB |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **GALLAGHER SHARP, LLP,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Defendant.** | |

Pending before the Court is Plaintiff Daniel Lonergan's ("Lonergan" or "Plaintiff") Motion for Reconsideration. For the following reasons, Plaintiff's Motion is DENIED.

## I. Background

This case concerns Lonergan's claims that Defendant Gallagher Sharp, LLP ("Gallagher Sharp" or "Defendant") failed to accommodate his disability during his employment in violation of the Americans with Disabilities Act ("ADA") and Ohio Rev. Code. § 4112.02 ("§ 4112.02").[1] (*See generally* Doc. No. 1.)

On November 26, 2024, Lonergan filed a Complaint against Defendant alleging violations of the ADA and § 4112.02 and claiming that Defendant failed to accommodate his disability (attention deficit hyperactivity disorder) in the workplace. (*See generally id.*) On January 31, 2025, Defendant filed a Verified Answer to Lonergan's Complaint that included various email attachments of

---

[1] A more complete summary of the allegations in this action can be found in this Court's Memorandum Opinion and Order dated July 10, 2025. (Doc. No. 10.)

correspondence between Lonergan and Defendant's employees/management. (*See generally* Doc. No. 6.)

On January 31, 2025, Defendant filed a Motion for Judgment on the Pleadings. (Doc. No. 7.) On February 3, 2025, Plaintiff filed a Brief in Opposition to Defendant's Motion. (Doc. No. 8.) On February 18, 2025, Defendant filed a Reply in Support of its Motion. (Doc. No. 9.)

On July 10, 2025, this Court issued a Memorandum Opinion and Order (hereinafter "Opinion") granting Defendant's Motion for Judgment on the Pleadings. (Doc. No. 10.) In relevant part, this Court found that Lonergan's Complaint was "devoid of any factual allegations detailing the 'reasonable accommodations' he claims to have requested," that Lonergan's sole allegation on that point was "wholly conclusory" as "Lonergan includes no details indicating what he even suggested, let alone how that related to his position," and that "[e]ven then, Lonergan does not clarify or elaborate as to what his actual proposed accommodations were …." (Doc. No. 10 at PageID #83.) The Court thus found that Lonergan failed to allege a plausible claim for relief under Federal Rule of Civil Procedure 8.

On August 7, 2025, Lonergan filed a Motion for Reconsideration ("Motion"). (Doc. No. 12.) On August 20, 2025, Defendant filed an Opposition to Plaintiff's Motion ("Opposition"). (Doc. No. 13.) On August 27, 2025, Lonergan filed a Reply in Support of his Motion ("Reply"). (Doc. No. 14.)

Accordingly, Lonergan's Motion is ripe for review.

## II. Standard of Review

Lonergan brings his Motion under Federal Rule of Civil Procedure 59.[2]

---

[2] In his Motion, Lonergan first indicates that he brings his Motion "[p]ursuant to Rule 27 of the Federal Rules of Civil Procedure." (Doc. No. 12 at PageID #88.) In Defendant's Opposition, Defendant asserts that Rule 27 "is plainly inapplicable to a request for reconsideration" as it "permits the perpetuation of deposition testimony before an action is

2

Under Rule 59, a court may grant a motion to reconsider when the plaintiff shows "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Service*, 616 F.3d 612, 615 (6th Cir. 2010).

"It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996); *see also Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) ("A Rule 59 motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"). Motions to alter or amend are extraordinary and should be sparingly granted. *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd.*, 2007 WL 1362457 at *2 (N.D. Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995).

**III. Analysis**

In his Motion, Lonergan raises various arguments relating to this Court's prior Opinion. The Court will address each argument in-turn, below.

---

filed and does not apply to post-judgment motions," and instead submits that Plaintiff's Motion should be evaluated under Rule 59(e). (Doc. No. 13 at PageID #98–99.) In his Reply, Lonergan acknowledges that his Motion is indeed brought under Rule 59, and that his earlier reference to Rule 27 was the result of an "unfortunate typographical error." (Doc. No. 14 at PageID #109.) Accordingly, the Court will evaluate Lonergan's Motion under Rule 59(e).

### A. Failure to Specify Requested Accommodations

Lonergan first argues that "failing to specify requested accommodations is not fatal to an ADA claim." (Doc. No. 12-1 at PageID #89.) In support of this argument, Lonergan references *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), in which the Supreme Court held that the *McDonnell Douglas* framework for establishing a *prima facie* case "is an evidentiary standard, not a pleading requirement." (*Id.* at PageID #90.) Lonergan thus argues that a "plaintiff need not plead facts establishing a prima facie case of discrimination … in order to defeat a motion to dismiss." (*Id.* at PageID #91.) Finally, Lonergan contends that two cases cited by this Court,[3] *Rorrer* and *Berneau*, are distinguishable because *Rorrer* was decided at the summary judgment stage and *Berneau* did not require the precise accommodation to be pled. (*Id.* at PageID #90–91.)

In its Opposition, Defendant first points to Lonergan "conced[ing] that he 'could be more descriptive in his pleadings going forward….'" (Doc. No. 13 at PageID #100.) However, Defendant then focuses its efforts on arguing that the accommodations referenced in its Answer are "*per se* unreasonable" and that Lonergan's claim would thus fail "*even if* Plaintiff had plead specific accommodations." (*Id.* at PageID #100–01 (emphasis in original).) Defendant then briefly addresses the various accommodation requests referenced in Plaintiff's Motion, contending, in relevant part, that Lonergan "did not raise [the] alleged accommodation request in his Complaint or in the Parties' original briefing." (*Id.* at PageID #103.)

In his Reply, Lonergan reiterates his assertion that "the Court applied an incorrect standard when granting Defendant's Motion for Judgment on the Pleadings," and his "belief that were the

---

[3] *See Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014); *Bernau v. Architectural Stainless, Inc.*, 2017 WL 2831518 (E.D. Mich. June 30, 2017).

4

Court to apply the appropriate standard, the Court would properly deny Defendant's Motion for Judgment on the Pleadings." (Doc. No. 14 at PageID #109.) Lonergan also argues that while Defendant "suggests that the Court 'already rejected proposed accommodations as *per se* unreasonable," "Plaintiff notably did not propose the accommodations requested." (*Id.* at PageID #110.) Rather, Lonergan contends that such "proposals were presented, uncharitably, by the Defense." (*Id.* at PageID #110.) Finally, Lonergan asserts that the "reasonableness of any of his proposals are a question of fact that are not properly at issue at the pleading stage." (*Id.*)

"A claimant need not [] allege facts establishing a prima facie case of disability discrimination to survive a motion to dismiss under Rule 12(b)(6)." *Gryder v. Buttigieg*, 2022 WL 602330, at *4 (E.D. Tenn. Feb. 28, 2022) (quoting *Morgan v. St. Francis Hosp.*, 2019 WL 5432041, at *1 (6th Cir. 2019)) (citing *Swierkiewicz v. Sorema N.A.*, 543 U.S. 506, 510–12 (2002)); *see also Hamilton v. Shelby County, Tenn.*, 2021 WL 1759859, at *4 (W.D. Tenn. May 4, 2021). "However, the complaint must nonetheless 'contain wither direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory…. [C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[4] *Hamilton*, 2021 WL 1759859, at *4 (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

In other words, courts evaluate whether a complaint plausibly alleges that a defendant "discriminate[d] against a qualified individual on the basis of disability." *See* 42 U.S.C. § 12112(a). Specifically in the context of a failure to accommodate claim, "to survive the motion to dismiss for

---

[4] *See also Gryder*, 2022 WL 602330, at *4 (recognizing that although a complaint need not establish a *prima facie* case to survive a motion to dismiss, it "must still meet the *Twombly/Iqbal* pleading standard by alleging sufficient factual content from which the Court, informed by its judicial experience and common sense, could draw the reasonable inference" that the defendant violated the ADA).

failure to state a claim, [a plaintiff] must allege sufficient facts for the [c]ourt to draw the reasonable inference … that the [defendant] failed to reasonably accommodate [the plaintiff's] disability."[5] *Gryder*, 2022 WL 602330, at *5. Simply put, a plaintiff is still required to plead an ADA claim "supported by enough facts to meet the basic pleading requirements of Federal Civil Procedure Rule 8" as opposed to "conclusory allegations that form a '[t]hreadbare recital[] of the elements' of a failure to accommodate claim." *Longstreet v. Industrial Com'n of Ohio*, 2015 WL 2238628, at *3 (N.D. Ohio May 12, 2015); *Eachus v. Haslam*, 2016 WL 323675, at *8 (M.D. Tenn. Jan. 27, 2016); *see also Baldwin v. Cole*, 2025 WL 2108186, at *4 (S.D. Ohio July 28, 2025) ("Plaintiff need not plead each element of a prima facie ADA claim to survive the initial screen but is still required to satisfy Rule 8 pleading standards.").

In making this evaluation, "when determining the sufficiency of a pleading at the motion to dismiss stage, courts still look to *prima facie* showing requirements for guidance."[6] *Hamilton*, 2021 WL 1759859, at *4; *Sloan v. Earnest*, 2024 WL 2882594, at *3 (W.D. Mich. May 20, 2024). And while a plaintiff need not establish every element of a *prima facie* case, courts have often found complaints to fall short of Rule 8 for ADA claims where they do not plead any factual details as to

---

[5] *See also* 42 U.S.C. § 12112(b)(5)(A) (defining "discriminat[ing] against a qualified individual on the basis of disability" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity").

[6] *See also South Pointe Wholesale, Inc. v. Vilardi*, 2018 WL 922379, at *2 (W.D. Ky. Jan. 23, 2018) (recognizing that "[w]hile the *prima facie* elements do not constitute a pleading standard, a plaintiff must allege specific facts necessary to show that they are entitled to relief against this legal backdrop").

the accommodations requested.[7] Contrarily, pleading factual details as to the accommodations requested will often be sufficient to survive a motion to dismiss.[8]

*Hamilton* and *Gryder* are instructive. In both cases, the courts recognized that, pursuant to *Swierkiewicz*, a plaintiff need not make a *prima facie* showing to survive a motion to dismiss. *See Hamilton*, 2021 WL 1759859, at *4; *Gryder*, 2022 WL 602330, at *4. Yet both courts still found that the plaintiff failed to state a plausible ADA failure to accommodate claim. *Id.*

---

[7] *See, e.g.*, *Hamilton*, 2021 WL 1759859, at *4–5 (recognizing *Swierkiewicz*'s holding that a "plaintiff need not make a *prima facie* showing to survive a motion to dismiss" but still concluding that plaintiff's complaint "set[] out only conclusory, 'the-defendant-unlawfully-harmed-me' allegations" because it "[did] not provide any facts whatsoever regarding when she requested any accommodations, what the requested accommodations were, or provide any context for how [defendant] failed to accommodate these requests"); *Eachus*, 2016 WL 323675, at *8 (finding that plaintiff's complaint "contain[ed] a series of conclusory allegations that form a '[t]hreadbare recital[] of the elements' of a failure to accommodate claim" because it did "not contain any factual allegations describing or identifying any accommodation that [plaintiff] needed in order to be able to perform her duties, the reasonableness of that accommodation, any request she made for that accommodation, or any denial by the defendants of her request"); *Gryder*, 2022 WL 602330, at *4–5 (recognizing *Swierkiewicz*'s holding but still concluding that complaint failed Rule 8 because the sole allegation that "[p]laintiff requested accommodation from a number of agency managers only to be ignored, refused, and denied by all" was conclusory and did "not include any factual allegations such as what *kind* of accommodation he requested"); *Longstreet*, 2015 WL 2238628, at *3 (recognizing that plaintiff "is not required to plead her ADA claim with heightened specificity" under *Swierkiewicz* but still concluding that plaintiff's complaint failed plausibility because, in relevant part, "[p]laintiff does not allege what accommodation she requested from her employer"); *Randolph v. Bath & Body Works, Inc.*, 2025 WL 1700906, at *3–4 (S.D. Ohio Jun. 18, 2025) (recognizing that plaintiff "need not plead each element of a prima facie ADA claim to survive the initial screen" but still concluding that the complaint fell short of Rule 8 because it "fail[ed] to allege what reasonable accommodation he requested or that he could perform the essential functions of the job with said reasonable accommodation"); *E.E.O.C. v. Elan Nutrition, Inc.*, 2008 WL 3539990, at *2 (W.D. Mich. Aug. 12, 2008) (acknowledging that a prima facie case need not be alleged but still concluding that complaint fell short of *Bell Atlantic* standard because it did not allege the claimed impairment "or the reasonable accommodation [employee] requested and was denied" and thus "fail[ed] to give any notice … of the factual basis for the lawsuit").

[8] *See, e.g.*, *Morgan v. St. Francis Hospital*, 2019 WL 5432041, at *2 (6th Cir. 2019) (finding that complaint survived motion to dismiss where it alleged that the defendant "failed to provide me light or limited duty (transitional work) as requested [i.e., the specific accommodation requested]," "provide[d] a chronology of events, identifie[d] the supervisor who refused an accommodation, and describe[d] [plaintiff's] doctor-ordered lifting restrictions"); *Meece v. Acima Credit, LLC*, 2018 WL 11304190, at *4 (E.D. Tenn. Mar. 8, 2018) (finding that complaint survived motion to dismiss because the plaintiff specifically pled that he "requested a few weeks off work for a required surgery related to his disability," and thus, "the request for time off work was the request for accommodation" and the plaintiff "[e]xplaining that it was for a required surgery was plaintiff explaining why that accommodation was reasonable," thereby satisfying Rule 8 pleading requirements).

Specifically, in *Gryder*, the plaintiff alleged that he "requested accommodation from a number of agency managers only to be ignored, refused, and denied by all." 2022 WL 602330, at *5. The court rejected that allegation as a "bare assertion of the legal conclusion that the [defendant] failed to accommodate his disability." *Id.* This was because it did "not include any factual allegations such as what *kind* of accommodation he requested, why he needed an accommodation, with whom he requested accommodation, when he requested an accommodation, or how he made the request." *Id.* (emphasis in original). Accordingly, the court "dismissed [the] failure-to-accommodate claim for failure to state a claim." *Id.*

Similarly, in *Hamilton*, the plaintiff alleged as follows: "My employer has been aware of my disability since 2017. Since filing the previous charge, my request for reasonable accommodations have [sic] been denied. Prior to filing my EEOC charge, I had no prior issues receiving a reasonable accommodation." 2021 WL 1759859, at *5. The court rejected that allegation as conclusory because it did "not provide any facts whatsoever regarding when she requested any accommodations, *what the requested accommodations were*, or provide any context for how [defendant] failed to accommodate these requests." *Id.* (emphasis added). Moreover, the court explicitly noted that "[m]erely stating accommodations were requested and that those requests were ignored is insufficient to survive a motion to dismiss." *Id.*

Turning to the present case, the Court finds that it was not a clear error of law to conclude that Lonergan failed to plead a plausible claim for relief for failure-to-accommodate under the ADA.

First, the Court finds that it was not clear error to reference the various *prima facie* factors in its Opinion. (*See* Doc. No. 10 at PageID #81–82.) As explained above, "when determining the sufficiency of a pleading at the motion to dismiss stage, courts still look to *prima facie* showing

8

requirements for guidance" even though a plaintiff is not required to make a full "*prima facie* showing to survive a motion to dismiss." *Hamilton*, 2021 WL 1759859, at *4; *Sloan*, 2024 WL 2882594, at *3. In its Opinion, this Court did not require Lonergan to plead a full *prima facie* case to survive dismissal.[9] Rather, this Court merely referenced those elements for guidance in evaluating the ultimate inquiry: whether Lonergan's overall Complaint plausibly alleged that Defendant did "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." (Doc. No. 10 at PageID #81.)

Second, the Court finds that it was not clear error to conclude that Lonergan's Complaint failed Rule 8 requirements because it was "devoid of any factual allegations detailing the 'reasonable accommodations' he claims to have requested."[10] (Doc. No. 10 at PageID #83.) Specifically, the Complaint pled as follows: "I repeatedly approached partners at the firm and suggested accommodations that I believed would allow me to accomplish my position's necessary tasks. In each instance, I was told that my suggestions would not work, and that I needed to figure it out on my

---

[9] Indeed, this Court did not engage in an "element-by-element examination of whether plaintiff established a prima facie case for failure to accommodate" nor transpose the *prima facie* case into a "rigid pleading standard for discrimination cases." *See Sturgill v. American Red Cross*, 114 F.4th 803, 809 (6th Cir. 2024) (finding that such an approach would be erroneous under *Swierkiewicz*). Rather, this Court merely referenced those elements as guidance in evaluating the overarching question of whether Lonergan plausibly alleged a claim for failure-to-accommodate under the ADA as a general matter. In doing so, this Court found that Lonergan's Complaint was deficient under Rule 8 for being conclusory. As evidenced by the cases discussed *supra*, *Swierkiewicz* does not prevent a court from finding that a complaint is conclusory and thus fails to meet Rule 8 pleading requirements. *See, e.g.*, *Baldwin*, 2025 WL 2108186, at *4 ("Plaintiff need not plead each element of a prima facie ADA claim to survive the initial screen but is still required to satisfy Rule 8 pleading standards.").

[10] The Court pauses to note that while Lonergan is proceeding pro se in this action, he is also a licensed practicing attorney. (*See* Doc. No. 1 at PageID #2.) It is well established that "the liberal pleading standard for pro se litigants does not invariably apply when the litigant is a licensed attorney." *Spence v. U.S. Dep't of Veteran Affairs*, 109 F.4th 531, 538 (D.C. Cir. 2024); *see also Huffman v. Lindgren*, 84 F.4th 1016, 1020–21 (9th Cir. 2023) ("The circuits that have reached the issue speak with one voice: they have uniformly declined to extend the liberal pleading standard to pro se attorneys.") (citing cases); *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) (concluding that it was not an abuse of discretion to deny pro se practicing attorneys special consideration). Accordingly, Lonergan is not entitled to have his Complaint scrutinized under the more liberal pleading standard generally afforded to pro se litigants.

own." (*Id.*) This Court found that such an allegation was "wholly conclusory" as it "include[d] no details indicating what he even suggested, let alone how that related to his position." (*Id.*) Such a finding is consistent with the authority discussed above, as courts have rejected nearly identical allegations—even while considering *Swierkiewicz*—as "bare assertion[s] of the legal conclusion that the [defendant] failed to accommodate his disability."[11] *Gryder*, 2022 WL 602330, at *4–5; *see, e.g.*, *id.* at *5 (finding allegation that "[p]laintiff requested accommodation from a number of agency managers only to be ignored, refused, and denied by all" to fall short of Rule 8); *Hamilton*, 2021 WL 1759859, at *5 (similar).

Finally, the Court notes that Lonergan's allegations regarding the failure to engage in the interactive process fail for similar reasons. The Sixth Circuit has indicated that even if an employer

---

[11] *See also supra* note 7. Finally, the Court turns to Lonergan's reference to *Bernau v. Architectural Stainless, Inc.*, 2017 WL 2831518, at *4 (E.D. Mich. June 30, 2017). In *Bernau*, the plaintiff alleged that he suffered an injury to his finger, requiring multiple visits to the hospital. *Id.* at *1. Following evaluation by a doctor, the doctor provided the plaintiff with a note clearing him to return to work but requesting various accommodations and restrictions on his work. *Id.* at *1, 4. Following the plaintiff's "return[] to work with requested accommodations," the "[d]efendant sen[t] him home" and "instructed him to leave." *Id.* In evaluating these allegations, the court found that the plaintiff's complaint "should have specified the requested accommodations" but that "his failure to do so [was] not fatal." *Id.* at *4. First, the Court finds that *Bernau* is distinguishable from the present case. Unlike Lonergan's Complaint, the complaint in *Bernau* contained more factual detail to permit a finding of plausibility that reasonable accommodations were requested. Specifically, detailed factual allegations existed regarding the fact that the plaintiff was hospitalized multiple times for his injury and was evaluated by medical professionals. *Id.* at *1. Following these evaluations of the plaintiff and based upon the doctor's medical experience, the doctor reached the conclusion that for the plaintiff to return to work, he would require certain accommodations and thus included such accommodations in the note. *Id.* These allegations provided more of a detailed factual basis to conclude that the plaintiff plausibly requested reasonable accommodations from his employer—namely, that such unspecified accommodations were deemed necessary by a medical professional following his evaluation of the plaintiff—and thus, did not necessarily fail Rule 8 plausibility requirements. Conversely, the Court finds that Lonergan's Complaint is more analogous to *Gryder*. In *Gryder*, the plaintiff alleged that "Plaintiff requested accommodation from a number of agency managers only to be ignored, refused, and denied by all," while Lonergan alleges that "I repeatedly approached partners at the firm and suggested accommodations that I believed would allow me to accomplish my position's necessary tasks. In each instance, I was told that my suggestions simply would not work, and that I needed to figure it out on my own." 2022 WL 602330, at *5; (Doc. No. 1 at PageID #3.) Just as the allegations in *Gryder* were deemed conclusory, the Court finds the same of Lonergan's near-identical allegations. Finally, to the extent that *Bernau* is inconsistent with the plethora of authority discussed above, *see supra* note 7, the Court finds *Gryder*, *Hamilton*, and the other discussed cases to be more persuasive.

does "not put sufficient effort into the 'interactive process' of finding an accommodation, 'that failure is actionable only if it prevents identification of an appropriate accommodation *for a qualified individual*." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015) (emphasis in original). The ADA defines a "qualified individual" as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Sixth Circuit has indicated that to survive a motion to dismiss on an ADA claim, a plaintiff "must plead facts that make plausible the inference that (1) she is disabled, (2) *she is qualified to perform her job requirements with or without reasonable accommodation*, and (3) she would not have been discharged but for the disability. *Thompson v. Hendrickson USA, LLC*, 2021 WL 848694, at *15 (M.D. Tenn. Mar. 5, 2021) (quoting *Darby v. Childvine, Inc.*, 964 F.3d 440, 445 (6th Cir. 2020)) (emphasis added); *see also Darby*, 964 F.3d at 445 ("Title I of the ADA prohibits employers from discriminating *against a qualified individual* because of a disability.") (emphasis added).

Here, Lonergan's Complaint is devoid of any factual non-conclusory allegations to support a finding that he could plausibly be deemed a qualified individual as defined by the ADA. *Cf. Thompson*, 2021 WL 848694, at *17 (reaching the opposite conclusion because the plaintiff alleged that she "had successfully worked in the Paint and Assembly department for many years, and she has alleged that she was qualified for a position in the brake assembly line and several other jobs"). And the ADA only requires making "reasonable accommodations to the known physical or mental limitations of an otherwise *qualified individual* with a disability …." § 12112(8). Thus, the Court

11

finds no clear error in the determination that Lonergan's Complaint fails as conclusory under general Rule 8 standards.[12]

Accordingly, in light of the authority discussed above, the Court finds that it was not clear error to conclude that Lonergan's Complaint was conclusory and thus failed to allege a plausible claim for relief.

### B. Reasonableness of Accommodations Referenced by Defendant

In his Motion, Lonergan next argues that the accommodation referenced in Defendant's Motion for Judgment on the Pleadings is not "obviously unreasonable." (Doc. No. 12-1 at PageID

---

[12] Lonergan's assertions regarding *Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014) are unavailing. First, the Court is not persuaded that where a plaintiff has not requested a reasonable accommodation, the duty to initiate the interactive process is triggered. *See Rorrer*, 743 F.3d at 1025. Second, the Court finds that *Swierkiewicz* does not apply here. In *Swierkiewicz*, the Supreme Court addressed whether a plaintiff was required to plead a full *prima facie* case of discrimination under *McDonnell Douglas*. 534 U.S. at 510–11. Specific to a failure to accommodate claim, the "*prima facie* elements" require a plaintiff to ultimately prove that: (1) the plaintiff was disabled within the meaning of the ADA, (2) the plaintiff was otherwise qualified for the position, with or without reasonable accommodation, (3) the defendant knew or had reason to know about the plaintiff's disability, (4) the plaintiff requested an accommodation, and (5) the defendant failed to provide the necessary accommodation. *Hamilton*, 2021 WL 1759859, at *5. In *Rorrer*, however, the court did not indicate that the failure to engage in the interactive process is an independent violation of the ADA if the plaintiff establishes a prima facie case *for discrimination*—i.e., the full *prima facie* standard that implicates *Swierkiewicz*. 743 F.3d at 1041. Rather, the court simply indicated that the interactive process only supports independent liability if the plaintiff establishes a prima facie showing that he *proposed a reasonable accommodation*—in other words, that it is the proposal of reasonable accommodations that triggers the interactive process. *Id.* This is distinct from requiring a plaintiff to show a full *prima facie* case of discrimination, as discussed in Lonergan's Motion. (*See* Doc. No. 12-1 at PageID #90 ("A plaintiff is not required to prove a prima facie *case* based solely on the pleadings") (emphasis added).) Third, while *Rorrer* did reverse the trial court's decision to grant summary judgment to the employer, the reasoning for doing so is key. In *Rorrer*, the district court had first concluded that the plaintiff had failed to request any reasonable accommodations. *Id.* at 1043–44. Subsequently, and as a direct result of this finding, the district court concluded that the claim pertaining to the interactive process "must fail" because the plaintiff never proposed a reasonable accommodation. *Id.* at 1045. On appeal, however, the Sixth Circuit found that the district court erred in its initial finding that the plaintiff had not proposed any reasonable accommodations. *Id.* at 1044. As a result of this error, the Sixth Circuit then concluded that the plaintiff "propos[ing] two reasonable accommodations … ma[de] a failure to engage in the interactive process an independent violation of the ADA." *Id.* at 1045. In other words, the failure to engage in the interactive process was only an independent violation *because* the plaintiff had "proposed two reasonable accommodations." *Id.* Here, however, the Court has already concluded that Lonergan's Complaint fails to plausibly allege in a non-conclusory manner that he proposed any reasonable accommodations, even under 12(b)(6) standards. *See supra*. For this reason, the result in *Rorrer* is distinguishable, and the procedural posture is inconsequential. Finally, even if it were found that the interactive process need not be preceded by a request for reasonable accommodations, the Court would find that Lonergan's Complaint would still fail on this point for failing to plausibly allege that Lonergan was a "qualified individual" under the ADA, as discussed above.

#94.) Lonergan contends that he "did not ever suggest that any action be taken without conversation with the client," and that a fundamental aspect of his claim is that "Defendant would not even discuss potential solutions with clients." (*Id.*) Specifically, Lonergan indicates that "[o]ne of the numerous suggestions that [he] made was to suggest to clients that [his] work be submitted at some discounted value of the budget number proposed by the experienced partners." (*Id.* at PageID #94–95.) Lonergan then indicates that all of this is moot, however, because "this was not the sole accommodation proposed by Plaintiff," and "[t]hat statement, alone, should be sufficient to survive Defendant's Motion." (*Id.* at PageID #95.) Finally, Plaintiff indicates that "among the other suggestions, he asked to have a personal assistant to help him stay organized and on top of his tasks." (*Id.*)

In its Opposition, Defendant discusses the reasonableness of various accommodations referenced in Lonergan's Motion. (*See generally* Doc. No. 13.) Specifically, Defendant first points to this Court's discussion that the accommodations referenced by Defendant would not be reasonable even if pled by Plaintiff. (*Id.* at PageID #100–01.) Defendant next discusses the "discounted work" and "legal assistant" proposals referenced in Plaintiff's Motion and argues that those would also not be reasonable for various reasons. (*Id.* at PageID #101–04.)

In his Reply, Lonergan maintains that while "Defendant's brief suggests that the Court 'already rejected proposed accommodations as *per se* unreasonable,'" "Plaintiff notably did not propose the accommodations rejected." (Doc. No. 14 at PageID #110.) Lonergan thus argues that this Court should not have "accept[ed] the accommodations as described by Defendant" because doing so did "not grant[] every inference in favor of Plaintiff." (*Id.*) Lonergan asserts that the reasonableness of any of his proposals are "question[s] of fact that are not properly at issue at the pleading stage." (*Id.*)

13

The parties' discussion on these points highlights the fatal deficiency to Lonergan's Complaint. Lonergan and Defendant make various arguments related to the reasonableness of certain accommodations. *See supra*. However, not *one* of these proposed accommodations appears in Lonergan's Complaint. (*See generally* Doc. No. 1.) Lonergan's Complaint does not allege that Lonergan proposed any "flat fee billing" arrangement. (*Id.*) It does not allege that Lonergan proposed a "discounted work" proposal. (*Id.*) Nor does it allege that Lonergan proposed having a "legal assistant" track his time. (*Id.*) As already explained above at-length, Lonergan's Complaint is totally devoid of *any* factual non-conclusory allegations regarding *any* accommodations he requested. *See supra*.

Accordingly, the "reasonableness" of *any* of these above-described accommodations is irrelevant because Lonergan does not *allege* that he requested them. Lonergan's Complaint does not include such allegations. (*Id.*) While Defendant discussed certain accommodations, Lonergan argued that such accommodations were "noticeably absent from the Complaint and the provided emails," and even in Lonergan's Reply, he argues that he "did not propose the accommodations" referenced by Defendant. (Doc. No. 8 at PageID #61–62; Doc. No. 14 at PageID #110.) It is only in Lonergan's Motion for Reconsideration that, for the first time, Lonergan provides *any* information as to what he claimed to have proposed. (Doc. No. 12-1 at PageID #94–94.)

But this Court's evaluation under Rule 8 looks to whether the Complaint alleges a plausible claim for relief—not Lonergan's Motion. *See, e.g.*, *American Association of Nurse Anesthesiology v. Robert F. Kennedy, Jr.*, 2025 WL 2459208, at *5 (N.D. Ohio Aug. 26, 2025) (Barker, J.) ("[A] plaintiff may not amend his complaint by adding factual allegations as a part of a response in opposition to a motion to dismiss."). Lonergan's Complaint did not include, nor did he amend to

14

include, *any* of these accommodations now being referenced, for the first time, in his Motion. Thus, regardless of whether the reasonableness of a proposal is a "question of fact … not properly at issue at the pleading stage," (Doc. No. 14 at PageID #110), there are no proposals in Lonergan's Complaint properly pled under Rule 8 to which the Court could even reach the issue of reasonableness.[13] *See Hamilton*, 2021 WL 1759859, at *5 ("Merely stating accommodations were requested and that those requests were ignored is insufficient to survive a motion to dismiss.").

      Lonergan's arguments highlight the conclusory nature of his Complaint. In his Motion, Lonergan suggests that he proposed that Defendant "discuss potential solutions with clients," to which Defendant refused. (Doc. No. 12-1 at PageID #94.) Yet his Complaint does not allege this. Lonergan then indicates that he suggested his "work be submitted at some discounted value" or that a "personal assistant … help him stay organized and on top of his tasks"—again, accommodations that were not pled in his Complaint. (*Id.* at PageID #94–95.) Then, in his Reply, Lonergan maintains that he "notably did not propose the accommodations" referenced by Defendant and discussed by this Court, that such "proposals were presented, uncharitably, by the Defense," and that accepting the "accommodations *as described by Defendant* is not granting every inference in favor of Plaintiff." (Doc. No. 14 at PageID #110 (emphasis in original).) The issue for Lonergan is that this Court cannot accept the accommodations *as described by Plaintiff* because he *does not describe* any

---

[13] On this point, the Court pauses to recognize that the Sixth Circuit has indicated that the "reasonableness of a requested accommodation is generally a question of fact." *Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013). As such, had Lonergan properly pled a non-conclusory factual allegation as to the accommodations he requested, the reasonableness of said accommodation may have been better addressed at a later stage of the proceedings. This does not change the Court's conclusion in the present case, however, because Lonergan's Complaint was dismissed for failing Rule 8 requirements by not plausibly alleging that he proposed any particular accommodation at all, thereby failing to create a factual issue as to the reasonableness of an accommodation. (*See* Doc. No. 10 at PageID #84 ("The Court thus finds that Lonergan's sole conclusory allegation in his Complaint falls short of Rule 8 standards.").)

accommodations in his Complaint.[14] His Complaint is wholly conclusory as to the accommodations proposed, and accordingly, the Court finds no clear error that would "result in a different disposition of the case."[15] *Gerber v. Riordan*, 2012 WL 366543, at *10 (N.D. Ohio Jan. 31, 2012).

### C. Emails Attached to Defendant's Answer

Finally, Lonergan argues that the Court improperly relied upon emails attached to Defendant's Answer. (Doc. No. 12-1 at PageID #93.) First, Lonergan contends that "[n]owhere in the Complaint does Plaintiff reference the emails provided by Defendant." (*Id.*) Second, Lonergan takes issue with the Court indicating that for certain emails described in Lonergan's Complaint, it could "rely on the exact language of the emails rather than Lonergan's characterization of them." (*Id.* at PageID #93–94.)

In its Opposition, Defendant asserts that Lonergan "waived this argument" because he did not address these issues when raised in the original briefing. (Doc. No. 13 at PageID #104–05.) Second, Defendant contends that Lonergan referred to the emails in his Complaint, either explicitly or implicitly, including the February 7, 2024 email from Monica Sansalone and Lonergan's "final e-

---

[14] In his Motion, Lonergan references this Court's discussion relating to Lonergan's Opposition to Defendant's Motion for Judgment on the Pleadings, in which Lonergan indicates that the proposals referenced by Defendant "are noticeably absent from the Complaint and the provided emails." (Doc. No. 12-1 at PageID #92; Doc. No. 8 at PageID #61–62.) Lonergan asserts that "[t]he Court intimates that this is somehow contrary to his statement that the emails evidence that he offered multiple proposed accommodations." (Doc. No. 12-1 at PageID #92.) Lonergan misinterprets the Court's argument. As discussed *infra*, the Court concluded, independently of any emails, that Lonergan's Complaint was wholly conclusory as to allegations that he proposed a reasonable accommodation. (Doc. No. 10 at PageID #83.) Thereafter, the Court merely noted that, upon its review of the emails, it did not observe any specific accommodations referenced in the emails. (*Id.*) The main point, however, is that Lonergan's Complaint itself contains no plausible non-conclusory allegations as to reasonable accommodations that were requested. (*See id.* ("In short, Lonergan's *Complaint* wholly fails to provide this Court with any details to permit it to conclude that he has alleged that he requested an objectively reasonable accommodation.") (emphasis added).)

[15] Because Lonergan's Complaint independently fails for this reason, the Court finds it unnecessary to address the arguments relating to the reasonableness of the essential function of employment—for even if the Court resolved that issue in Lonergan's favor, that would not remedy the above-described deficiencies and thus would not warrant reversal.

mail to firm management." (*Id.*) Third, Defendant maintains that the email exhibits attached to its Answer are considered part of the pleadings under Federal Rule of Civil Procedure 10(c). (*Id.* at PageID #105.) Finally, Defendant submits that it was appropriate for the Court to rely on the exact language of the emails rather than Lonergan's characterization of them. (*Id.*)

In his Reply, Lonergan does not address these points further.

As a preliminary matter, the Court finds that by not raising these arguments in his initial briefing, Lonergan waived them. *See Brumley*, 909 F.3d at 841 ("A Rule 59 motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"). Nonetheless, the Court will still address the arguments for purposes of clarification.

First, the Court disagrees with Lonergan's assertion that "[n]owhere in the Complaint does Plaintiff reference the emails provided by Defendant." (Doc. No. 12-1 at PageID #93.) For instance, Lonergan's Complaint alleges that "[o]n February 7, 2024, an email was sent to the entire firm," and that "[w]ithin the hour [of that email], I received a sharply critical email from Managing Partner Monica Sansalone [where] [s]he declared that my behavior was 'absolutely unacceptable' and that I needed to 'remedy this asap.'" (Doc. No. 1 at PageID #3–4.) Attached to Defendant's Answer is this very email—an email sent on February 7, 2024, by Sansalone to Lonergan, in which Sansalone indicates that Lonergan's delay in entering and releasing time was "entirely unacceptable" and that Lonergan needed to "remedy this asap." (Doc. No. 6-6 at PageID #46.) Lonergan's Complaint next describes his response to this email, as well as Sansalone's subsequent reply—all of which are also attached to Defendant's Answer. (Doc. No. 1 at PageID #3–4; Doc. No. 6-6 at PageID #45–46.) Similarly, Lonergan's Complaint describes his "final email to the firm management," which is also

17

attached to Defendant's Answer. (Doc. No. 1 at PageID #4; Doc. No. 6-8 at PageID #50.) Thus, the notion that "[n]owhere in the Complaint does Plaintiff reference the emails provided by Defendant" is false. (Doc. No. 12-1 at PageID #93.)

Second, the Court finds that including the exact language of the referenced emails in its Opinion rather than Lonergan's characterization of them did not constitute clear error. To clarify, this referred to the February 7, 2024 email from Sansalone, which Lonergan characterizes as a "sharply critical email." (Doc. No. 1 at PageID #3.) As explained above, this particular email referenced by Plaintiff was attached to Defendant's Answer. (Doc. No. 6-6 at PageID #46.) Thus, in setting forth the factual background for its Opinion, the Court simply quoted the full email as opposed to merely referencing it as a "sharply critical email from [Sansalone]," as characterized by Lonergan. (Doc. No. 10 at PageID #75.) The Court fails to see how including the precise language of the February 7, 2024 email that was directly referenced and quoted by Lonergan's Complaint—rather than merely referring to it by its characterization as a "sharply critical email"—constituted clear error.

Third, the Court agrees with Defendant that the emails may become part of the pleadings under Fed. R. Civ. P. 10(c).[16] The Sixth Circuit has indicated that "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."[17] *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

---

[16] Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Under Rule 7(a), a pleading includes "an answer to a complaint." Fed. R. Civ. P. 7(a).

[17] Lonergan's arguments related to *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999), therefore do not change the Court's conclusion. This is because even if Lonergan's Complaint was not "related to" the emails in question, the emails would still be part of the pleadings under Rule 10(c). As explained in *Commercial Money Center*, the principle that "when a document is referred to in the pleadings and is integral to the claims, it may be considered" is distinct from the principle that "documents attached to the *pleadings* become part of the pleadings and may be considered on a motion to dismiss" under Rule 10(c). 508 F.3d at 335–36. Here, the emails were not attached to Defendant's Motion for Judgment on the Pleadings, but rather were attached to the Answer—which is *itself* a pleading—and thus, became part

18

Finally, and most importantly, however, is that this Court never indicated that the specific emails were the "totality of the communications mentioned," nor that Lonergan's Complaint failed because the "emails somehow contradict the plain allegations in Plaintiff's Complaint." (Doc. No. 12-1 at PageID #93–94.) Rather, as explained at-length above, Lonergan's Complaint fails independent of any consideration of the emails because it is conclusory and therefore does not allege a plausible claim for relief. *See supra* Sections III.A–B. In other words, the Court reached the conclusion that "Lonergan's Complaint is devoid of any factual allegations detailing the 'reasonable accommodations' he claims to have requested" independently of the emails.[18] (Doc. No. 10 at PageID #83.)

Accordingly, the Court finds that no clear error resulted as related to the emails.

## IV. Conclusion

Accordingly, for the foregoing reasons, Plaintiff's Motion is DENIED.

**IT IS SO ORDERED.**

Dated: September 5, 2025
                      *s/ Pamela A. Barker*
                      PAMELA A. BARKER
                      UNITED STATES DISTRICT JUDGE

---

of said pleading under Rule 10(c). Regardless, however, these distinctions are inconsequential because, as explained above, the Court did not rely on the emails to "contradict" Lonergan's Complaint—rather, Lonergan's Complaint failed Rule 8 independently of any emails. *See supra* Sections III.A–B.

[18] For this reason, even if the any of the above points as related to the emails were found to be erroneous, Lonergan fails to demonstrate that "correcting the defect will result in a different disposition of the case." *Gerber*, 2012 WL 366543, at *10.